**Teresa FINKE, Appellant,**

v.

**COMAIR, INC.; Hon. Grant Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

NO. 2014–CA–000624–WC

Court of Appeals of Kentucky.

RENDERED: APRIL 29, 2016; 10:00 A.M.

Brief and Oral Argument for Appellant: Ched Jennings, Louisville, Kentucky.

Amicus Curiae Brief for the Kentucky Chapter of American Federation of Labor and Congress of Industrial Organizations: Eric Lamb, Louisville, Kentucky.

Brief and Oral Argument For Appellees: Mark W. Howard, Florence, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; JONES AND J. LAMBERT, JUDGES.

*OPINION*

JONES, JUDGE:

The Appellant, Teresa Finke, has asked us to review the Workers' Compensation Board's March 12, 2014, Opinion. Therein, the Board affirmed the Administrative Law Judge ("ALJ"). Specifically, the Board held that Finke did not have an unfettered right to have her father present during an Independent Medical Examination ("IME"), and that the ALJ did not abuse his discretion in determining that Finke failed to present a "compelling reason" why she could not submit to the

examination without her father present. The Board also upheld the ALJ's decision that Finke was not entitled to receive any benefits during the time of her noncompliance. Having reviewed the record, we affirm.

## I. BACKGROUND

Finke sustained work-related injuries to her right hand and shoulder on May 26, 2007, while working as a full-time flight attendant for Comair. Finke was briefly taken off work. Finke returned to work, part-time, but was taken off work again in May of 2011, when she began having pain in her right shoulder. Eventually, Finke came under the care of Dr. Forest Heis for her right shoulder condition. Finke underwent right shoulder surgery in September 2011.

Prior to her right shoulder surgery, there was a dispute regarding the compensability of Finke's right shoulder condition and proposed right shoulder surgery. On September 23, 2009, at the request of Comair, Finke appeared before Dr. Ronald Burgess for an IME. Dr. Burgess, however, refused to perform the IME because Finke would not enter the examining room without her father present.

On September 28, 2009, Finke filed a motion seeking an extension of time in which to complete her proof. On October 23, 2009, Comair filed a response to Finke's motion for an` extension of time, noting it had no objection. However, Comair also filed a motion for costs, a motion to compel Finke to appear for an IME, and a motion to suspend any potential benefits until she appeared for an IME. Comair asserted that it had scheduled an IME with Dr. Ronald Burgess on September 23, 2009, and that Finke appeared, but refused to fill out the form Dr. Burgess requires of his examinees or to go into the examination room without her father. Comair stated that Dr. Burgess does not permit any other individuals to be present in the examination room. As such, Dr. Burgess did not examine Finke, and Comair was forced to pay Dr. Burgess's $1,350.00 fee for the canceled examination. Specifically, Comair moved for costs to be assessed against Finke and requested an order compelling Finke to appear at a subsequent IME with Dr. Burgess. Comair argued to allow Finke to refuse to see Dr. Burgess effectively permitted her to dictate its medical expert. Comair also requested any potential benefits be suspended until Finke agreed to the IME by Dr. Burgess.

On October 30, 2009, Finke filed a response to Comair's motion. Finke admitted that she appeared for the IME at Dr. Burgess's office, but refused to fill out the questionnaire regarding her medical history and the work injury because she did not feel comfortable providing answers to the questionnaire without counsel present or an attorney reviewing the document and her answers. Finke "asserted the questionnaire was akin to interrogatories utilized by Dr. Burgess to file a report against her interest." Finke also admitted that she refused to be examined by Dr. Burgess without her father being present. Except for examinations by her treating physician, Finke did not wish to be examined by any other physician without her husband or father being present.

On December 8, 2009, the ALJ entered an order granting the parties additional time to take proof and passed consideration of Comair's motion for costs, but sustained Comair's motion to compel Finke to appear for an IME with Dr. Burgess and follow his protocol. Finke timely filed an appeal with the Board on December 30, 2009. The Board, however, dismissed Finke's appeal finding the ALJ's order

was not final and appealable. The case was remanded back to the ALJ.

Following additional pleadings by the parties and a May 12, 2010, telephone conference, the ALJ on May 13, 2010, ordered that the December 8, 2009, order be set aside and stated that Finke shall not be compelled to attend an IME with Dr. Burgess. Thereafter, at the request of Comair, Finke was to be examined by Dr. Michael Best who permitted Finke to have her father present during the IME.

On June 24, 2011, Comair filed the June 7, 2011, IME report, medical records review, and functional capacity evaluation of Dr. Michael Best. Comair also introduced Dr. Best's June 21, 2011, deposition testimony transcript. Dr. Best testified he had no problem permitting Finke's father to be present and would allow a spouse or parent to be present during the examination. He indicated in 98% of the examinations, family members are present.

By order dated December 21, 2011, the ALJ sustained the motion to bifurcate Finke's right shoulder claim and ordered that a formal hearing be held on January 19, 2012.

The issues to be determined by the ALJ during the January 19, 2012, evidentiary hearing included Comair's entitlement to reimbursement for no-show fees and the suspension of Finke's benefits during the time there was a dispute concerning the IME.

At the hearing, Finke testified she was seen by Dr. Warren Bilkey and Dr. Best. Both doctors allowed her father to be present during the examinations. Dr. Burgess did not want to permit her father to be present during his scheduled IME of Finke. Finke testified that she did not feel comfortable without her father, husband, or someone else with her during the IME. Finke stated that she takes this position concerning any doctor who is not her treating physician.

On March 19, 2012, the ALJ entered an Interlocutory Opinion, Award, and Order. The ALJ found Finke's right shoulder condition and resulting surgery were work-related and compensable. The ALJ awarded Temporary Total Disability ("TTD") benefits from May 1, 2011, until such time Finke reached Maximum Medical Improvement ("MMI") or was capable of returning to her regular customary work. The ALJ denied Comair's request for no-show fees and its motion to suspend benefits, finding:

> Having considered the matter and each party's arguments, the Administrative Law Judge first concludes plaintiff did not unreasonable [sic] fail to present for and cooperate with her scheduled examination. She appeared at the appropriate time and she wanted her father to be able to attend her examination, which Dr. Burgess refused. While plaintiff's insistence on having her father present may be unusual, it does not render the request unreasonable. Indeed, both Dr. Bilkey and Dr. Best allowed plaintiff's father to attend their examinations. Accordingly, the Administrative Law Judge is not persuaded plaintiff acted unreasonably in insisting on having her father present, particularly when this was the first time her father's attendance was an issue with any examining physician. Because plaintiff was not unreasonable in her actions, she is not responsible for any no-show fees and her benefits shall not be suspended or forfeited for the period between Dr. Burgess' scheduled examination and Dr. Best's examination.

The ALJ then placed Finke's claim in abeyance and ordered the parties to file status reports every sixty days. Finke

continued to receive TTD benefits through May 25, 2012.

On May 25, 2012, at the request of Comair, Finke was scheduled for an IME with Dr. Daniel Primm. Finke presented herself with her father, however, Dr. Primm refused to proceed with the IME with Finke's father present. Comair terminated Finke's TTD benefits on May 25, 2012.

On June 4, 2012, Comair filed a motion requesting an order "suspending benefits" from May 25, 2012, the date of her scheduled IME with Dr. Primm. Comair argued that Finke would not undergo the IME without her father present, which was contrary to Dr. Primm's policy. Comair maintained that if Finke insisted that her father be present during the IME, she should have known to work through this issue and not waste time and money. Comair sought a telephonic status conference or an order compelling Finke to attend Dr. Primm's IME and to submit to an examination without her father present.

On July 6, 2012, the ALJ granted Comair's motion to compel but denied Comair's motion to suspend benefits. The ALJ directed that Finke "shall comply with IME physician protocols."

On July 9, 2012, Finke filed a petition for reconsideration arguing the issue of her being examined in the presence of her husband or father was discussed in earlier proceedings. Finke argued that the July 6, 2012, order was inconsistent with the ALJ's findings in the March 19, 2012, interlocutory opinion and order. As such, Finke asserted that the July 6, 2012, order was erroneous, and requested additional analysis so as to permit a meaningful appeal.

The ALJ denied Finke's petition for reconsideration by order dated August 2, 2012, finding:

The plaintiff's point is well taken and the Administrative Law Judge is not insensitive to plaintiff's concerns about attending an IME. However, the issue was simpler when it was only one physician, Dr. Burgess, who would not examine plaintiff with her father present and Dr. Best was willing to accommodate. Now, Dr. Primm also does not want to examine plaintiff with her father present. At this point, it now appears that plaintiff's desire to have her father present during an IME has become a significant obstacle to allowing the defendant employer to obtain the IME physician of its choosing, which it is otherwise entitled to have. Therefore, unless plaintiff can put forth some other compelling reason to excuse her from any IME that will not allow her father to attend, the Administrative Law Judge now finds that plaintiff's request on this point presents too great a burden on the defendant employer's ability to get the examination in which it is entitled.

On September 12, 2012, Comair filed a motion to dismiss Finke's claim and terminate TTD benefits. It asserted that contrary to the August 2, 2012, order, it had received an August 29, 2012, letter from Finke's counsel indicating that Finke would not attend Dr. Primm's examination on September 7, 2012. It asserted Finke's letter was tantamount to a failure to prosecute and that the ALJ should dismiss her claim. Finke objected to Comair's motion, noting the statutes and regulations do not permit dismissal of a claim with prejudice without a hearing on the merits.

In an order dated October 16, 2012, citing to Finke's August 29, 2012, letter, the ALJ found Finke's refusal to attend the IME in violation of KRS[1] 342.205(3)

---

1. Kentucky Revised Statutes.

and forfeited her entitlement to compensation "so long as she refused to attend an IME." Citing to KRS 342.0011(14), which defines compensation as the sum of income benefits, medical benefits, and related benefits, the ALJ concluded that Finke was not entitled to payment of income benefits or medical expenses incurred from August 29, 2012, and continuing for so long as she refused to cooperate and attend a defense IME. Accordingly, the ALJ ordered that Finke's benefits be terminated immediately and that any additional income benefits to which Finke may otherwise be entitled by future award forfeited from August 29, 2012, and continuing so long as Finke refused to submit to a defense IME.

Finke filed a petition for reconsideration, again citing to the fact that the ALJ had previously addressed this issue in an interlocutory opinion and order. Finke's petition for reconsideration was denied by the ALJ by order dated November 16, 2012.

On January 28, 2013, Finke filed a motion to schedule a hearing stating, among other things, that without waiving her right to litigate the issues presented, she will reluctantly submit to Dr. Primm's IME. Finke requested the ALJ grant Comair a reasonable period to schedule the IME with Dr. Primm, and tentatively schedule a hearing in Louisville. On March 11, 2013, the ALJ scheduled a Benefit Review Conference and formal hearing for March 30, 2013.

A final evidentiary hearing was held on May 30, 2013, at which Finke was the only witness to testify. Finke testified she saw Dr. Primm on April 19, 2013. She testified that her father had been present for all IMEs performed by non-treating physicians. Finke testified that when she originally appeared with her father, Dr. Primm declined to see her, and noted that Dr. Best had allowed her father to be present.

She testified in January 2013, she authorized her counsel to notify Comair that she would submit to an IME without her father being present. When she was seen by Dr. Primm she prepared notes concerning the examination, a copy of which was attached to her testimony.

On July 29, 2013, the ALJ rendered an Opinion, Order and Award. The ALJ determined Finke sustained no permanent impairment as a result of the injury to her finger, but had sustained a 10% whole person impairment due to her work-related right shoulder injury. The ALJ awarded Finke TTD benefits from May 27, 2007, to June 13, 2007, and again from May 2011, when she was taken off work by Dr. Heis, through July 12, 2012, the date Dr. Heis determined Finke had reached MMI. The ALJ found Finke did not retain the capacity to return to her previous employment as a flight attendant.

Concerning the suspension of Finke's benefits from August 29, 2012, through January 28, 2013, when Finke agreed to submit to Dr. Primm's IME, the ALJ found that Finke's arguments had:

been squarely addressed in previous Orders. Suffice it to say, KRS 342.205(3) indicates "no compensation" shall be payable during any period a *claimant refuses to submit to an IME.* Such language leaves the Administrative Law Judge still persuaded that the statute requires actual forfeiture of benefits rather than a temporary hold on such benefits to be fully reinstated upon compliance. Therefore, it is again determined that plaintiff is not entitled to any income benefits or medical expenses from August 29, 2012, through January 28, 2013. [Emphasis in original].

Finke filed a petition of reconsideration with the ALJ. By order dated August 27, 2013, the ALJ denied Finke's petition for reconsideration. Finke then filed a timely

appeal to the Board. On appeal to the Board, Finke made the following arguments: employers do not have an unfettered and unrestricted right to have IMEs and that she is not required to submit to the protocol of the examining physician and therefore can have a family member present during the IME examination arranged by Comair; that the ALJ erred by requiring her to provide a compelling reason for having a family member present during the IME; that the ALJ committed reversible error by ordering forfeiture of all benefits as opposed to suspension of benefits; and finally, that the ALJ committed reversible error in commencing the forfeiture of her benefits on August 29, 2012, and should have commenced the forfeiture on October 16, 2012, the date of his order, since the ALJ had previously permitted Finke to have her father present for the IME.

On appeal, in addressing Finke's first two arguments, the Board found KRS 342.205(1) did "not grant employers an unrestricted right to have IMEs in Kentucky, as the statute gives the employee the right to have a duly qualified physician or surgeon present during the examination." Specifically, the Board stated:

> [W]e believe KRS 342.205(1) is unambiguous on its face, and a rule of statutory construction long accepted by Kentucky courts is that unambiguous statutes must be applied as written. "[A]bsent an ambiguity, 'there is no need to resort to the rules of statutory construction in interpreting it.'" *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775, 784 (Ky.2008). Citing *Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915 (Ky.2003), the legislature's intent must be inferred "from words used in enacting statutes rather than surmising what may have been intended but was not expressed." *Id.* Neither the ALJ nor this Board are at liberty to interpret a statute at vari-

ance with its stated language. *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71, 77 (Ky.2002).

Additionally, an established rule of statutory construction is where both a specific statute and a general statute are potentially applicable to the same subject matter, the specific statute controls. *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky.2005). The Kentucky courts have held: "One of the established rules of statutory construction is that when two statutes deal with the same subject matter, one in a broad, general way and the other specifically, the specific statute prevails." *Land v. Newsome*, 614 S.W.2d 948, 949 (Ky. 1981). We acknowledge what is at issue is in part a specific statute, KRS 342.205(3), versus certain provisions of the civil rules, the rule regarding specific versus general statutory construction is still persuasive and decisive. Equally persuasive and decisive is the following language from CR 1(2) which states as follows: These Rules govern procedure and practice in all actions of a civil nature in the Court of Justice *except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over an inconsistent procedure set forth in the Rules.* [Emphasis added].

Civil Rules 26–37 are trumped by the specific statute regarding the employer's right to have the employee examined. As the statute only permits Finke to designate a physician to be present, we find no error....

Concerning Finke's assertion the weight of the authority nationally favors the employee having the means of witnessing or controlling invasion of her privacy during an IME and obtaining proof as to what happened at the examination, we note KRS 342.205(1) affords her some

protection by permitting a physician or surgeon of her choosing to be present. In addition, the ALJ gave her the opportunity to establish why an additional safeguard was needed . . . . .

We conclude the ALJ did not err in requiring Finke to provide a compelling reason for having a family member present during the IME. As pointed out, the statute affords Finke certain protections by permitting her to have a physician present. In order to expand that right, Finke was required to provide the ALJ with a compelling reason. When she was unable to provide such a reason, the ALJ properly refused to allow her father to be present.

In addition, Finke's concerns about having to supply such a reason are unconvincing as the claimant could provide the reason under seal or in camera for review by the ALJ. However, we note any germane medical history of the employee is admissible and would be set out in the report. We understand Finke's concern over revealing reasons pertaining to sexual molestation, religious beliefs, or other peculiar problems. However, we emphasize those concerns can be dealt with by allowing the employee to file under seal the basis for the request for a third party to be present.

We are also unpersuaded by Finke's argument the ALJ should have required the medical examiner to provide a reason why her father should not be present. The statute does not require such a showing. It grants the employer the right to examine the employee at all reasonable times and under all reasonable conditions. Here, before requiring Finke to follow Dr. Primm's protocol, the ALJ gave her the opportunity to provide other reasons for having her father present. We believe the ALJ could easily conclude Finke's desire to have her father present was not reasonable or compelling. The only stated reason she provided was that she was uncomfortable with a non-treating doctor. We would venture to guess almost every employee is uncomfortable prior to and during an IME conducted by the employer's physician. Therefore, we find no error in the ALJ's refusal to allow her father to be present and in requiring Finke to provide a compelling reason for her father's presence. This is consistent with the wording of KRS 342.205(1). . . .

Next the Board addressed Finke's arguments regarding whether the ALJ committed reversible error by ordering forfeiture of all benefits as opposed to suspension of benefits, and whether the ALJ committed reversible error in commencing the forfeiture of her benefits on August 29, 2012, rather than October 16, 2012, the date of his order, since he had previously permitted Finke to have her father present for an IME. In reading KRS 342.205(3) the Board found:

KRS 342.205(3) which reads as follows:

If an employee refuses to submit himself or herself to or in any way obstructs the examination, his or her right to take or prosecute any proceedings under this chapter shall be suspended until the refusal or obstruction ceases. No compensation shall be payable for the period during which the refusal or obstruction continues.

Finke not only refused to submit to an examination, she refused to comply with the ALJ's order. Consequently, the statute mandates her right to prosecute any proceedings under the chapter shall be suspended until the refusal or obstruction ceases and no compensation shall be payable for the period during which the refusal continues. We are unpersuaded by the argument Finke's right to receive the benefits during the

period of obstruction is merely suspended and once the obstruction ends she is entitled to receive the benefits payable during the suspension period. In essence, Finke's interpretation of the statute results in no penalty as she would not be deprived of any benefits due to her obstruction. Since the statute does not allow the ALJ to assess the costs incurred by the employer due to the willful failure to attend an employer's IME, we believe it is clear the legislature concluded the appropriate penalty was to deny compensation to the employee, temporary or permanent, during the period the proceedings were suspended. Consequently, Finke was not entitled to the benefits payable during the period of suspension and she forfeited those benefits by her actions.

We also disagree with Finke's assertion there is no forfeiture of medical benefits and forfeiture only applies to temporary benefits. KRS 342.0011(14) reads as follows: "'Compensation' means all payments made under the provisions of this chapter representing the sum of income benefits and medical and related benefits." KRS 342.205(3) directs that no compensation shall be payable during the time the refusal or obstruction continues. Subsection (3) does not distinguish between income and medical benefits. Rather, it specifically references compensation which includes income benefits, medical benefits and related benefits. Similarly, Section (3) makes no distinction between temporary or permanent income benefits. The language relied upon by Finke in *B.L. Radden & Sons, Inc. v. Copley, supra,* does not direct that only temporary benefits are subject to the provisions of KRS 342.205(3). Rather, we believe the Court of Appeals was discussing an available remedy as a result of Copley's failure to submit to an employer's medical examination. Subsection 3 of the statute mandates all compensation shall not be payable during the period of the refusal or obstruction. In the same vein, *Stearns Coal & Lumbar Co. v. Roberts, supra,* and *B.L. Radden & Sons, Inc. v. Copley, supra,* uphold the forfeiture of all compensation payable during the period of the refusal or obstruction. As such, the ALJ correctly determined Finke was not entitled to any benefits; temporary or permanent income benefits and medical benefits during the period she refused or obstructed the proceedings. Consequently, we find no error in the ALJ's determination Finke is not entitled to income and medical benefits during the period the proceedings were suspended.

Finally, we find no error in ordering the forfeiture to begin as of the date of Finke's counsel's letter. The refusal to submit to the examination began on August 29, 2012, when Finke's counsel advised Comair she would not comply with the ALJ's previous order directing her to comply with the IME physician's protocol. The order was not entered until a month and a half after Finke's stated refusal. The statute clearly contemplates the proceedings shall be suspended at the point the employee refuses to submit to or obstructs the examination. In this case, Finke's refusal to submit began on August 29, 2012, and continued for over a month and a half before the ALJ entered the October 16, 2012, order. The statute contemplates the proceedings shall be suspended from the date of the employee's refusal and shall continue until the refusal or obstruction ceases.

Favorable to Finke, the ALJ chose the date Finke's attorney informed the ALJ she would reluctantly attend Dr. Primm's IME without her father pres-

ent as the date of cessation. The ALJ did not wait to see if Finke attended Dr. Primm's examination approximately two months later. The ALJ took Finke at her word and terminated suspension of the proceedings based on her representation. The ALJ's decision regarding the suspension of the proceedings and the compensation to which Finke is not entitled shall be affirmed.

Accordingly, the Board affirmed the ALJ's October 16, 2012, Abeyance Order; November 16, 2012, order ruling on the petition for reconsideration; July 29, 2013, Opinion, Order & Award; and August 27, 2013, order ruling on Finke's petition for reconsideration.

This appeal followed.

## II. STANDARD OF REVIEW

In a workers' compensation claim, our standard of review differs depending on whether questions of law or fact are present. KRS 342.285 provides that the ALJ is the sole finder of fact in workers' compensation claims. Our courts have construed this authority to mean that the ALJ has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from that evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky.1985); *McCloud v. Beth–Elkhorn Corporation*, 514 S.W.2d 46, 47 (Ky.1974).

 On review, neither the Board nor the appellate court can substitute its judgment for that of the ALJ as to the weight of evidence on questions of fact. *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky.App.1982). In short, the reviewing body cannot second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. *Medley v. Board of Education, Shelby County*, 168 S.W.3d 398, 406 (Ky.App.2004).

 However, "[w]hen considering questions of law or mixed questions of fact and law, the reviewing Court has greater latitude in determining whether the findings were supported by evidence of probative value than when only a question of fact is at issue." *Purchase Transportation Services v. Estate of Wilson*, 39 S.W.3d 816, 817–18 (Ky.2001). "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App.2009).

## III. ANALYSIS

### A. KRS 342.205

Finke's first argument on appeal raises the question of whether an injured employee must submit to the protocols of examining physicians. More specifically, may an injured employee have an immediate family member present during an IME by the defendant employer?

In relevant part, KRS 342.205(1) provides:

(1) After an injury and so long as compensation is claimed, the employee, if requested by a party or by the administrative law judge, shall submit himself or herself to examination, at a reasonable time and place, to a duly-qualified physician or surgeon designated and paid by the requesting party. The employee shall have the right to have a duly-qualified physician or surgeon designated and paid by himself or herself present at the examination, but this right shall not deny the requesting party's physician or surgeon the right to examine the injured employee at all reason-

able times and under all reasonable conditions.

■ Like the Board, we do not find KRS 342.205(1) ambiguous. "Where a statute is intelligible on its face, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus*, or cure an omission." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky.2000).

Here, KRS 342.205(1) does not provide an employer an "unfettered and unrestricted" right to have IME performed in a Kentucky Workers' Compensation claim. Within KRS 342.205(1) are various restrictions providing limitations and safeguards during an IME requested by the defendant employer or administrative law judge. Specifically, KRS 342.205(1) provides that the IME must be performed by "a duly-qualified physician or surgeon," and the IME must be performed "at a reasonable time and place." Moreover, as further protection provided to the injured employee under KRS 342.205(1), the injured employee "shall have the right to have a duly-qualified physician or surgeon designated and paid by himself or herself present at the examination[.]"

■ It is clear KRS 342.205(1) does not provide an employer an "unfettered and unrestricted" right when requesting that an injured employee undergo an IME. The General Assembly afforded an injured employee certain protections, to the exclusion of others. It gives an employee an unfettered right to have her own physician or surgeon present at an IME. It does not give an employee an unfettered right to have another person, a family member in this case, present.

This is not to say, however, that a physician's protocols can always be used to prevent the presence of anyone other than another physician or surgeon from attending the IME with the employee. In *Metropolitan Property & Cas. Ins. Co. v. Overstreet*, 103 S.W.3d 31 (Ky.2003), our Supreme Court was asked to determine what "conditions" may be imposed upon a CR [2] 35.01 examination for the protection of the examinee once it has been determined that an examination is warranted in a civil case. The Supreme Court ultimately determined that an examinee could request some external presence at the IME or that the IME be recorded in some way, and that the trial court could grant the request "only upon a showing of 'good cause' by the examinee." *Id.* at 38. Showing good cause by its nature requires the plaintiff to articulate to the trial court the reason why the plaintiff wishes to have a third party attend the examination. The trial court must then weigh (1) the nature of the proposed external presence; (2) evidence that the requested examination might be conducted in an unfair manner; and (3) the nature of the examination itself. *Id.* at 39–41.

■ The only reason Finke gave the ALJ for not wanting to submit to the IME without her father present was that she "felt uncomfortable." After a second doctor refused to conduct the IME with the father present, the ALJ asked Finke to provide the basis for her discomfort. Citing privacy concerns, she refused to do so.

Like the Board, we do not believe the ALJ abused his discretion in this situation. It was incumbent on Finke to provide to the ALJ some rationale for her insistence on her father being present. Certainly, we can imagine several scenarios that would have justified the request (religious

2. Kentucky Rules of Civil Procedure.

convictions, past sexual abuse, etc.); however, Finke did not provide the ALJ with any reason other than general discomfort. If privacy was a concern, Finke could have requested to communicate her reasons to the ALJ *ex parte* and under seal. She did not do so.

Because Finke did not provide the ALJ with sufficient information to evaluate her request, the ALJ was unable to find that Finke had shown good cause. Therefore, we find no error in the ALJ's determination that Finke did not properly present herself for an IME as required by the Act.

We pause here to reiterate that this result was dictated by the lack of information presented to the ALJ by Finke. Had Finke presented the ALJ with some basis to support her position, such as a religious objection, we believe it would have been entirely appropriate for the ALJ to order that any IME be conducted with a male family member present.

### B. KRS 342.205(3)

Finke next argues that the ALJ and Board committed reversible error by declaring Finke's benefits "forfeited" rather than suspended.

KRS 342.205(3) provides:

If an employee refuses to submit himself or herself to or in any way obstructs the examination, his or her right to take or prosecute any proceedings under this chapter shall be suspended until the refusal or obstruction ceases. No compensation shall be payable for the period during which the refusal or obstruction continues.

Like the Board, we are not persuaded the ALJ erred when he declared Finke's benefits "forfeited." Finke argues that once she submitted to the IME, her previously suspended benefits should have been restored to her.

KRS 342.205(3) provides the ALJ the only mechanism for imposing a penalty on an employee who refuses to submit to an IME for an employer. *B.L. Radden & Sons, Inc. v. Copley*, 891 S.W.2d 84 (Ky. App.1995). "Compensation" as defined by KRS 342.0011(14) includes "all payments made under the provisions of this chapter representing the sum of income benefits and medical and related benefits[.]" Thus, when Finke refused to submit to Dr. Primm's IME protocols on August 29, 2012, the ALJ correctly determined that Finke was not entitled to any compensation benefits during the period she refused or obstructed the proceedings.

We fail to find any mechanism in the statute for the retroactive restoration of previously suspended benefits. To the contrary, the statute states that "no compensation shall be payable for the period during which the refusal or obstruction continues." We believe this portion of the statute is clear that Finke is not entitled to receive benefits for the period at issue irrespective of the fact that the suspension was later lifted. In *Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 258 (Ky.2015), the Supreme Court cited KRS 342.205(3) and noted that by virtue of this statute "an employee's conduct after an injury may [ ] result in the termination or reduction of income benefits." A reduction could only take place if the benefits were deemed to be forfeited during the time of noncompliance. While this may seem harsh, we must be cognizant that KRS 342.205(3) was designed as a sanction for noncompliance. *B.L. Radden & Sons, Inc. v. Copley*, 891 S.W.2d at 85.

### IV. CONCLUSION

For the reasons set forth above, the March 12, 2014, decision of the Kentucky

Workers' Compensation Board is AF-FIRMED.

ALL CONCUR.