142 Nev., Advance Opinion 35

## IN THE SUPREME COURT OF THE STATE OF NEVADA

GABRIEL POWERS,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
GLORIA STURMAN, DISTRICT
JUDGE,
Respondents,
and
CARLOS PATINO BUENO,
Real Party in Interest.

No. 89144

**FILED**

MAY 14 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or, alternatively, prohibition challenging a district court discovery order compelling a neuropsychological examination.

*Petition granted in part and denied in part.*

Womble Bond Dickinson (US) LLP and Daniel F. Polsenberg and Kory J. Koerperich, Las Vegas; Hall Jaffe, LLP, and Steven T. Jaffe and Kevin S. Smith, Las Vegas,
for Petitioner.

Bighorn Law and Kimball Jones and Joshua P. Berrett, North Las Vegas,
for Real Party in Interest.

The Schnitzer Law Firm and Jordan P. Schnitzer, Las Vegas,
for Amicus Curiae Nevada Justice Association.

SUPREME COURT
OF
NEVADA


(O) 1947A

26-22069

Wilson Elser Moskowitz Edelman & Dicker LLP and Michael P. Lowry, Las Vegas,
for Amicus Curiae Las Vegas Defense Lawyers.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, C.J.:

The rules of civil procedure govern court-ordered mental and physical examinations of a party for purposes of litigation. *See* NRCP 35(a). In 2021, we ruled that a statute governing the same, NRS 52.380, unconstitutionally encroached on the inherent power of the judiciary to regulate court procedures. *Lyft, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 832, 501 P.3d 994 (2021). In response, the legislature enacted NRS 629.620, which applies to persons required to undergo a mental or physical examination by court order, contractual obligation, or some other obligation. Like its predecessor, NRS 629.620 permits exam conditions that directly contradict those addressed in NRCP 35. In this writ proceeding, petitioner challenges a district court order directing the plaintiff in civil litigation to comply with an examination subject to conditions beyond or contradictory to those set forth in NRCP 35 but arguably allowed by NRS 629.620. We hold that NRS 629.620 violates the separation of powers doctrine to the extent that it imposes conditions that conflict with or exceed those that NRCP 35 establishes for court-ordered independent medical or physical examinations during discovery. Therefore, to the extent NRS 629.620 applies to NRCP 35-based examinations in civil discovery, it is

unconstitutional and of no effect. As to the specific conditions challenged here, the district court did not abuse its discretion in permitting the disclosure of the raw testing data to counsel but did abuse its discretion in allowing for the presence of an interpreter and in allowing the exam to be audio recorded. Therefore, the writ petition is granted in part.

## FACTS AND PROCEDURAL HISTORY

Petitioner Gabriel Powers and real party in interest Carlos Patino Bueno were involved in a motor vehicle collision. Bueno sued, claiming to have suffered a traumatic brain injury and seeking nearly $2 million in damages related to the injury. The parties agreed that Bueno would undergo a neuropsychological exam but could not agree on the conditions to be imposed on the exam. Powers argued that the exam was subject to the requirements under NRCP 35, while Bueno argued that it was subject to the requirements under NRS 629.620. The district court expressly ruled that the exam was subject to the requirements of NRCP 35 and then imposed the following conditions: (1) the raw data from the exam was to be provided to Bueno's counsel and others involved in the litigation with reasonable restrictions involving disclosure; (2) the data could be examined by counsel and by an expert in a different field; (3) Bueno is not required to obtain an expert to access the raw data; (4) an observer would not be present, but the exam would be audio recorded; and (5) Bueno would have the assistance of a court-certified interpreter for the entirety of the exam. These conditions exceeded, in part, the scope of NRCP 35 and, at times, seemingly invoked the intent of the legislature and NRS 629.620. Powers sought reconsideration, which the district court denied. This writ petition followed.

## DISCUSSION

*We elect to entertain the petition*

A writ of mandamus or prohibition is an extraordinary remedy, and "[t]he decision to entertain a petition for [writ relief] lies within this court's discretion." *Gen. Motors Corp. v. Eighth Jud. Dist. Ct.*, 122 Nev. 466, 469, 134 P.3d 111, 113-14 (2006). A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). And prohibition may issue "to arrest the proceedings of a district court exercising its judicial functions when such proceedings are in excess of the jurisdiction of the district court." *Club Vista Fin. Servs. v. Eighth Jud. Dist. Ct.*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012).

Though a plain, speedy, and adequate legal remedy ordinarily precludes writ relief, NRS 34.170, this court may consider advisory mandamus when an issue is otherwise likely to elude appeal and "is novel, of great public importance, and likely to recur," *Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 820, 822, 407 P.3d 702, 706-07, 708 (2017) (quoting *United States v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994)). The parties have shown that there is a clear divide in Nevada among discovery commissioners, state court judges, and federal court judges regarding whether NRS 629.620 is constitutional as applied to court-ordered mental and physical examinations conducted during civil discovery.[1] Further,

---

[1]In addition to the instant case where the district court assertedly applied NRCP 35 over NRS 629.620 in regard to medical exam conditions, there are three other cases before this court alone where district court judges and their discovery commissioners have applied NRS 629.260 over

 

adequate consideration of the issues is unlikely to occur on a subsequent appeal, as discovery will have been completed under the terms of the district court's order. Thus, our intervention is warranted. As we reasoned in *Lyft* when considering the similar question of whether NRS 52.380 was unconstitutional, determining whether NRS 629.620 supersedes NRCP 35 "is an issue of statewide importance that presents a novel question of law requiring clarification," and this court's "clarification of this issue will assist the district courts and parties alike by resolving uncertainty" over which law governs exams performed during discovery. 137 Nev. at 834, 501 P.3d at 998. Given that the issue presented is "a substantial issue of public policy due to the conflicting interests of plaintiffs and defendants with respect to the procedures" for such exams, *id.*, we elect to entertain the petition under our advisory mandamus framework.[2]

*NRCP 35 and NRS 629.620 irreconcilably conflict*

NRCP 35 governs court-ordered physical and mental examinations for purposes of litigation and prescribes rules for recording the exam, having observers at the exam, and reporting the exam's findings. NRS 629.620 also covers court-ordered physical and mental examinations, as well as those imposed by contractual or other obligations. The statute sets forth the "rights" of the person being examined, which include having an observer-of-choice and interpreter present and having the exam recorded through audio, stenographic, or video means. NRS 629.620(1)(b), (c), (e). It

---

NRCP 35 to medical exam conditions. *See LV Rest. Mgmt. Corp. v. Eighth Jud. Dist. Ct.*, Docket No. 89532, *Flamingo Paradise Gaming, LLC v. Eighth Jud. Dist. Ct.*, Docket No. 89783, and *Morgan v. Eighth Jud. Dist. Ct.*, Docket No. 90645.

[2]Powers' alternative request for a writ of prohibition is denied.

further provides that a person compelled to submit to an examination in violation of its terms has the right to sue for damages and other relief. NRS 629.620(4).

To determine whether a separation of powers problem might exist, we must first decide whether NRS 629.620 irreconcilably conflicts with NRCP 35 or whether the two provisions can exist in harmony. *Lyft*, 137 Nev. at 835, 501 P.3d at 999. Powers asserts that NRCP 35 controls as the more specific rule governing neuropsychological exams, such that NRS 629.620 does not apply in these circumstances. And he contends that if NRCP 35 cannot be read as an exception to NRS 629.620, the statute unconstitutionally removes the court's rule-based discretion to decide recording and observer conditions based on good cause. Bueno, on the other hand, argues that NRS 629.620 governs all mental and physical examinations, necessarily including neuropsychological exams, and creates a substantive right that overrides court procedural rules, effectively conceding that the laws conflict.

"Under the general/specific canon, the more specific statute will take precedence and is construed as an exception to the more general statute so that, when read together, the two provisions are not in conflict but can exist in harmony." *Williams v. State, Dep't of Corr.*, 133 Nev. 594, 601, 402 P.3d 1260, 1265 (2017) (citation modified); *see also Laird v. State, Pub. Emps. Ret. Bd.*, 98 Nev. 42, 45, 639 P.2d 1171, 1173 (1982) ("Where a general and a special statute, each relating to the same subject, are in conflict and they cannot be read together, the special statute controls."). While the general/specific canon ordinarily applies to conflicting statutory provisions, other state appellate courts have held that the canon is nevertheless "persuasive and decisive" when confronted with conflicting

statutes and civil rules. *See, e.g., Finke v. Comair, Inc.*, 489 S.W.3d 242, 248 (Ky. Ct. App. 2016).

Powers argues that NRCP 35 is more specific because it contains a carve-out for neuropsychological exams while NRS 629.620 makes no mention of neuropsychological exams and just generally regulates physical or mental exams. We are unpersuaded that NRCP 35 can be deemed more specific than NRS 629.620 simply because of its brief mention of neuropsychological exams in the context of whether an observer may be present as a matter of course. NRCP 35(a)(4).

More importantly, NRCP 35 and NRS 629.620 undoubtedly conflict in three material ways. First, under NRCP 35(a)(3), the exam may be audio recorded only upon a showing of good cause. NRS 629.620(1)(e), however, permits audio, stenographic, or video recording as of right. Second, NRCP 35(a)(4)(B) does not allow an observer for neuropsychological, psychological, or psychiatric examinations unless good cause is shown, while NRS 629.620(1)(b) permits the examinee to have an observer throughout any exam, whether or not good cause exists. Third, NRCP 35(a)(4) prohibits an observer from being the party's attorney or anyone employed by the party or the party's attorney, while NRS 629.620(1)(b) allows the observer to include "the person's attorney" or "any other person hired by or on behalf of the person." Thus, NRCP 35 and NRS 629.620 irreconcilably conflict, and we turn to step two of the *Lyft* framework.

*NRS 629.620 violates the separation of powers doctrine*

Under step two, we consider whether NRS 629.620 violates the separation of powers doctrine. *Lyft*, 137 Nev. at 838, 501 P.3d at 1000-01. Powers argues that NRS 629.620 is unconstitutional for the same reasons

 

its predecessor statute, NRS 52.380, was found unconstitutional. He argues that NRS 629.620 is procedural, not substantive, and that the statute is unconstitutional because it attempts to abrogate an existing rule of procedure, NRCP 35. Bueno rebuts that NRS 629.620 confers substantive rights that cannot be abridged by Rule 35.

This court reviews de novo whether a statute is constitutional. *Tam v. Eighth Jud. Dist. Ct.*, 131 Nev. 792, 796, 358 P.3d 234, 237 (2015). Statutes are presumed to be constitutional, and the petitioner bears the burden of showing a statute is unconstitutional by making a clear showing of invalidity. *Id.* at 796, 358 P.3d at 237-38.

This court possesses inherent authority to prescribe rules necessary or desirable "to regulate the judicial process." *Lyft*, 137 Nev. at 840, 501 P.3d at 1002; NRS 2.120(2). When a statute and court rule are in conflict, the separation of powers analysis examines whether the challenged statute is substantive or procedural. *Hefetz v. Beavor*, 133 Nev. 323, 330 n.5, 397 P.3d 472, 478 n.5 (2017). The legislature violates the separation of powers doctrine when it enacts a procedural statute that conflicts with an existing procedural rule, and such a statute is of no effect. *State v. Connery*, 99 Nev. 342, 345, 661 P.2d 1298, 1300 (1983); *see Comm'n on Ethics v. Hardy*, 125 Nev. 285, 291-92, 212 P.3d 1098, 1103 (2009) (the separation of powers doctrine prevents "one branch of government from encroaching on the powers of another branch"); Nev. Const. art. 3, § 1.

A substantive right is, generally, one that "creates duties, rights and obligations," whereas a procedural standard "specifies how those duties, rights, and obligations should be enforced." *Azar v. Allina Health Servs.*, 587 U.S. 566, 573 (2019) (internal quotation marks omitted). NRCP 35 is a procedural rule. *Lyft*, 137 Nev. at 840, 501 P.3d at 1002 (citing

SUPREME COURT
OF
NEVADA

(O) 1947A

8

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941) (holding that the federal analog to NRCP 35 is procedural because it is "the judicial process for enforcing rights and duties recognized by substantive law")).

Although NRS 629.620 differs from its predecessor statute NRS 52.380 in some ways—namely, its characterization of creating substantive rights for examinees and inclusion of a right of action for any alleged violation—it suffers from the same flaw: it encroaches on the inherent power of the judiciary. This court undoubtedly possesses the ability to prescribe rules to facilitate the judicial functioning of the courts, *State v. Second Jud. Dist. Ct. (Marshall)*, 116 Nev. 953, 963, 11 P.3d 1209, 1215 (2000); *see also* NRS 2.120, and part of this inherent power includes the ability of this court to set forth rules for discovery. We did so in adopting NRCP 35. By enacting NRS 629.620 with terms that are contrary to those in NRCP 35, the legislature encroached on the judicial branch's authority to prescribe procedural guidelines for mental and physical exams during civil discovery. Doing so violates the separation of powers doctrine and thus, to the extent NRS 629.620 conflicts with NRCP 35, it is of no effect. *Connery*, 99 Nev. at 345, 661 P.2d at 1300.

We recognize that NRS 629.620 differs from NRS 52.380 in significant ways and was apparently drafted in response to *Lyft*. For instance, the scope of the statute's application was expanded from examinations solely for civil litigation purposes to also include examinations pursuant to contractual or other types of obligations, and remedies for violating the statute were added. However, mental and physical exams conducted during civil discovery for purposes of the litigation are, at their core, part of the process designed to resolve the underlying claims. Further, while NRS 629.620 purports to create a

SUPREME COURT
OF
NEVADA

(O) 1947A

"substantive right to bodily autonomy," Hearing on A.B. 244 Before the Assemb. Judiciary Comm., 82d Leg. (Nev., Mar. 9, 2023) (statement of Alison Brasier), its text does not use those terms or otherwise identify or mention any such substantive rights. Rather, the statute only sets forth procedural preferences for how a mandated exam is to take place. That is, bodily autonomy may arguably be the substantive right, but the presence of observers or use of audio, stenographic, or video recordings is the *procedure* by which that right is enforced. *See Azar*, 587 U.S. at 573. Accordingly, the terms at issue here relating to observers and recordings are quintessentially procedural. *See generally Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1199 (S.D. Ala. 2018) ("Whether the Alabama legislature chooses to label something a 'substantive right' is certainly not dispositive of, and perhaps not even relevant to, to the matter of whether a substantive right is actually at stake . . . ."); *cf. Claypool v. Mladineo*, 724 So. 2d 373, 380-81 (Miss. 1998) (holding that the legislature categorizing something as substantive is helpful to the inquiry but only insofar as the legislature did not intend to abrogate any procedural rules).

Moreover, the addition of the prescribed remedies does not necessarily make NRS 629.620 substantive. This court held in *Lyft* that NRS 52.380's sole remedy, a protective order under NRCP 26(c), weighed against our determination that the statute was substantive because it could be obtained only if the party seeking the remedy had filed an underlying civil claim. 137 Nev. at 839, 501 P.3d at 1001. Put more succinctly, this court opined that for the right to be substantive, there must be a remedy for the violation. That is not to say, however, that a remedy for a violation *necessarily* makes a right substantive. Even if this were the case, the remedy of a protective order is already at the court's disposal for a discovery

violation under NRCP 26(c). So too are the other remedies for discovery violations that NRS 629.620 provides, such as a stay of the proceedings or the sanction of attorney fees. *See* NRCP 37(b)(1), (3). In other words, NRS 629.620 creates no *new* remedy for a purported substantive right violation that district courts do not already possess as discovery sanctions. Thus, in the context of civil discovery proceedings, examinees gain no more remedies for violations of any rights than they already have, and thus, NRS 629.620 is procedural.

We hold, in the context of NRCP 35-based examinations occurring during civil discovery, that NRS 629.620 attempts to abrogate NRCP 35 and is unconstitutional. To the extent that NRS 629.620 encroaches on this court's rules prescribing the handling of NRCP 35-based physical and mental examinations conducted during civil litigation, it is of no effect.

*The exam conditions*

Having concluded that NRCP 35 governs physical and mental exams conducted during civil discovery, we next analyze the exam conditions imposed by the district court. Powers contends that the district court allowed unreasonable conditions on Bueno's neuropsychological exam without good cause. Specifically, he argues against (1) the mandated disclosure of raw data and testing materials, (2) permitting an audio recording, and (3) the presence of an interpreter. Cumulatively, he argues that these conditions violate his due process rights.

"Discovery matters are within the district court's sound discretion," and this court "will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion." *Club Vista*, 128 Nev. at 228, 276 P.3d at 249. An abuse of discretion occurs when

Supreme Court
OF
Nevada

(O) 1947A

the district court bases its decision on a clearly erroneous factual determination, it disregards controlling law, *MB Am., Inc. v. Alaska Pac. Leasing*, 132 Nev. 78, 88, 367 P.3d 1286, 1292 (2016), or it applies an incorrect legal standard, *Staccato v. Valley Hosp.*, 123 Nev. 526, 530, 170 P.3d 503, 506 (2007).

*The raw data was properly directed to be disclosed subject to a protective order*

The district court ordered that the raw data and other information from the neuropsychological exam be provided to attorneys and other persons involved in the litigation, including experts who were not neuropsychologists, with reasonable restrictions to be placed on disclosures involving confidential designations, such as through a protective order. Powers argues that NRCP 35 does not authorize the full disclosure of the raw data and test materials. He suggests that a "compromise" approach—in which the data is released only to another neuropsychologist—would be appropriate because the neuropsychology community unanimously condemns the notion that raw data and testing materials can be disclosed to nonprofessionals. Bueno argues that he is entitled to have an expert assist in interpreting the data and that there is no requirement that he choose an expert with his opponent's preferred qualifications. And further, he argues that disclosure of the raw data is proper because NRCP 16.1 allows for the disclosure of data used in making an expert report.

A California appellate court addressed nearly identical issues in *Randy's Trucking, Inc. v. Superior Court of Kern County*, 308 Cal. Rptr. 3d 645 (2023). First, just as Powers argues here, the defendants/petitioners in *Randy's Trucking* argued that because California's analogous statute did not explicitly call for the disclosure of raw data, any order directing raw

 

data disclosure was improper. *Id.* at 658. That court quoted another one of its appellate cases for the proposition that "while there is no express statutory authority for the plaintiff's position, neither is there statutory authority precluding a trial court, in its discretion, from ordering the disclosure." *Id.* (quoting *Carpenter v. Superior Ct. of Alameda Cnty.*, 45 Cal. Rptr. 3d 821, 836 (2006)). We find this reasoning persuasive here. Though NRCP 35 does not explicitly address the disclosure of raw testing data, "discovery matters are within the district court's broad discretion." *Club Vista*, 128 Nev. at 228, 276 P.3d at 249. And, in any case, NRCP 16.1 explicitly allows for the disclosure of data used to make an expert report. Thus, the disclosure of raw data, including examiner questions, is discoverable under NRCP 16.1, and nothing limits the ability of the district court to order such disclosure.

Next, Powers argues that the district court erred by allowing the disclosure of the data to anyone other than a neuropsychologist due to the concerns regarding disclosure from the neuropsychology community and his allegation regarding the ineffectiveness of protective orders. In *Randy's Trucking*, the district court ordered that the neuropsychologist produce the raw data results to plaintiff's counsel, subject to a protective order. 308 Cal. Rptr. 3d at 653. The defendants' expert neuropsychologist stated that she would provide the raw test data only to a licensed psychologist, citing, without much explanation, dangers associated with protective orders; the potential to compromise the validity of future tests; potential misuse and misrepresentation of tests by untrained persons; conflicts with ethical standards; the increased likelihood of dissemination of the exam, which raises a risk that parties will be coached in advance of the exam; and the increased ability for lawyers to routinely coach their clients on how to use

 

the exam to their advantage. *Id.* at 660. The California court found that the expert did not explain how a protective order would not ameliorate any dangers or how any ethical violations would occur if a court ordered the disclosure subject to a protective order. *Id.*

Likewise, a Colorado federal district court dealt with the same issue when a plaintiff requested raw testing data from a neuropsychological examination but the defendant opposed, arguing that the expert would release the data only to a licensed neuropsychologist. *Wright v. Hobby Lobby Stores, Inc.*, 344 F.R.D. 538, 540 (D. Colo. 2023). The Colorado court ordered the raw test data released to the plaintiff, subject to a protective order, reasoning that any "concerns about test security can be dealt with via the protective order and the designation of the materials to be produced as 'confidential.'" *Id.* at 542; *see also Cook v. Nation Express, LLC*, No. 3:20-cv-77, 2021 WL 640508, at *3 (S.D. Ohio Jan. 19, 2021) (noting that an expert neuropsychologist's "ethical concerns" regarding the release of the raw data to the plaintiff "can be alleviated through court order" and "do not outweigh Plaintiff's right to test his conclusions"); *Glennon v. Performance Food Grp., Inc.*, No. 2:20-cv-38, 2021 WL 3130050, at *6 (S.D. Ga. July 23, 2021) (explaining that there was "no indication a protective order would not resolve [the neuropsychologists'] concerns").

Further, regarding the use of raw data by a non-neuropsychologist, in *Randy's Trucking*, the court found that plaintiffs "should not be forced to retain an expert to gain access to these materials" and, should they choose to retain one, "that expert can only assist the attorney in preparing for cross-examination; to prepare and conduct an effective cross-examination," the attorney themself must become well-versed in the material. 308 Cal. Rptr. 3d. at 661. The court reasoned that

Supreme Court
OF
Nevada

(O) 1947A

14

"plaintiff's right to take discovery and cross-examine defendants' expert witnesses, which included being able to examine the expert on the matter upon which the expert's opinion is based and the reasons for that opinion," is weighed against any privacy concerns. *Id.* Without the raw data, the court explained, the plaintiff would be unable to scrutinize how the data was collected, analyze any discrepancies, and cross-examine the neuropsychologist on their opinion. *Id.*

Similarly, the Colorado court in *Wright* found that "[d]efendant's desire to produce the raw data only to a board certified neuropsychologist does not work in the litigation context" because the plaintiff "may or may not hire her own expert neuropsychologist, but that does not mean that Plaintiff's counsel should not be entitled to review the raw test data, potentially for use in cross examination of Defendant's expert." 344 F.R.D. at 542 (citation modified). The court went on to reason that lawyers without formal medical training frequently consult learned treatises or textbooks to become knowledgeable for purposes of cross-examination. *Id.*; *see also Cook*, 2021 WL 640508, at *2-3 (allowing the release of raw data to the plaintiff, a non-neuropsychologist, over the expert's objection); *Glennon*, 2021 WL 3130050, at *6 ("[T]he Court will not require Plaintiff to retain such an expert solely to review the data and material which [underlie] [the neuropsychologists'] opinion.").

We agree with the reasoning of these courts and conclude that the district court did not abuse its discretion by permitting disclosure of the raw data to Bueno's counsel, subject to a protective order. Similar to how the generalized fear of an examinee that an examiner will inaccurately report what happened at an exam is not sufficient to justify recording the examination under NRCP 35, *see infra* pp. 17-18, the generalized fears of

SUPREME COURT
OF
NEVADA

(O) 1947A

some neuropsychologists that nonpsychologists, if they are provided raw data, will violate protective orders, misuse the tests, and irreparably compromise the validity of future testing, is not sufficient to eliminate the broad discretion afforded to trial courts to order the disclosure of raw data as they seek to ensure the fairness of judicial proceedings. The disclosure ordered in this case was proper pursuant to NRCP 16.1 and NRCP 35 to allow Bueno's counsel to prepare for cross-examination, which includes effectively scrutinizing data collection. Just as the courts in *Randy's Trucking, Wright, Cook,* and *Glennon* found, (1) disclosure of data to those other than a neuropsychologist is proper, as plaintiffs should not be required to hire a neuropsychologist to attack the credibility of defense experts and effectively cross-examine the experts; (2) a protective order can effectively alleviate confidentiality concerns; and (3) speculative concerns about disclosure do not outweigh the right of the plaintiff to access the data. Therefore, we hold that the district court did not abuse its discretion by permitting disclosure of the raw data to Bueno's counsel, subject to a protective order.

*The district court failed to articulate cognizable good cause for audio recording*

The district court concluded that no good cause existed for an in-person observer at the examination but that good cause did exist for audio recording the examination. Powers argues that this is contradictory because an audio recording would essentially allow an unlimited number of observers to listen to the recording and the district court failed to offer a good explanation for that contradiction. During a hearing, Bueno's counsel noted that good cause existed for the audio recording, as it would allow Bueno to verify and scrutinize what occurred. Bueno's counsel explained

that he did not want to be in a situation in front of a jury where "he has to go against some PhD who is saying something else happened in that room" because counsel has "had many cases where upstanding doctors in this town have claimed things in their reports" that "were definitively proven to be false." The district court summarily found good cause to permit audio recording of the entire exam. Though the district court stated it was applying NRCP 35, during the initial hearing on the exam conditions the district court also explained it would allow audio recording because it could serve as a compromise to having an observer in the room and "the legislature says you have the right to know what goes on in there with an observer."

Under NRCP 35(3), "[o]n request of a party or the examiner, the district court may, for good cause shown, require as a condition of the examination that the examination be audio recorded." But "[a] generalized fear that the examiner might distort or inaccurately report what occurs at the examination is not sufficient to establish good cause to audio record the examination." NRCP 35, Advisory Committee Notes (2019 amendment).

Generally, recording is only proper when the court finds "special circumstances amounting to good cause for the requests." *Nogess v. Poydras Ctr., LLC*, No. 16-15227 c/w No. 16-15234, 2018 WL 1172958 (E.D. La. Mar. 6, 2018) (Order and Reasons). Special circumstances amounting to good cause are rare and typically include extreme situations, such as (1) where the plaintiff has a long history of serious mental health troubles and demonstrates significant memory loss, such that the court has doubts "as to whether plaintiff [would] be capable of providing any assistance to his attorney in understanding what took place during the examination," *Schaffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664

SUPREME COURT
OF
NEVADA

(O) 1947A

17

(D. Kan. 2011); (2) when the evidence suggests that the physician is abusive and has a predilection for ignoring court-ordered conditions, *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 654 (D. Kan. 2003); or (3) where serious doubts about the plaintiff's ability to communicate with his counsel about what occurred during the examination exist due to the plaintiff's education level, English language difficulties, and impaired memory and cognitive ability, *Maldonado v. Union Pac. R.R. Co.*, No. 09–1187–EFM, 2011 WL 841432, at *3 (D. Kan. Mar. 8, 2011) (Memorandum and Order).

On this record, we conclude that the district court abused its discretion by finding good cause to permit audio recording. First, Bueno's counsel argued a generalized fear that the neuropsychologist might distort the test results in front of the jury. To the extent the district court relied on this rationale, it was error, as the advisory committee clearly contemplated this exact reasoning and explained that it did not constitute good cause. *See* NRCP 35, Advisory Committee Notes (2019 amendment). Moreover, allowing the recording should be the exception rather than the norm; finding good cause to do so must be based on fact-specific circumstances, as opposed to generalized fears or concerns that would apply to any party and/or any exam, since the examinee themself can typically rebut the examiner's contentions with personal knowledge. Second, NRCP 35 does not call for the balancing of interests between having an observer *or* an audio recording, instead leaving the option to have an observer *and/or* an audio recording to the district court's discretion, based on good cause findings. And third, NRCP 35, not NRS 629.620, controls the neuropsychological exam procedural inquiry. Any reliance on legislative intent or pronouncements related to NRS 629.620 was error. Therefore, the

district court abused its discretion by finding that good cause existed to permit an audio recording of the exam.

*The district court erred in ordering the use of an interpreter*

Powers argues that the district court erred in ordering that the exam be conducted in English with a court-certified Spanish interpreter, as the ruling did not make sense, given that the examiner was fluent in Spanish. Powers further argues that the district court's reasoning is irrational because its impetus for conducting the exam in English was so the parties' *attorneys* could understand the recording. He argues this demonstrates a misunderstanding of due process by the district court.

The district court generally possesses the inherent authority to appoint an interpreter in civil proceedings to ensure fairness and impartiality for all parties. *See Caballero v. Seventh Jud. Dist. Ct.*, 123 Nev. 316, 322-23, 167 P.3d 415, 419 (2007). The record reveals that the district court ordered an interpreter in part based on Bueno's due process right to an interpreter, but also largely so both parties' attorneys could understand the recording. As we have found that the district court erred in ordering that the exam be recorded, conditioning the use of an interpreter on the recording that was ordered was also error. The district court's secondary concern was that uncertainty during the exam process *could* arise with a doctor who may only colloquially speak Spanish when the exam *could* involve the use of complicated medical terminology. These are general hypothetical concerns, however, and there is no actual evidence presented to the district court that would have justified the use of the interpreter, especially considering the doctor spoke Spanish and the written test is also published in Spanish to obtain more reliable and valid test results. NRCP 35 speaks to access to the evaluation, not management of the evaluation

SUPREME COURT
OF
NEVADA

(O) 1947A

process. Here, based on the lack of sufficient evidence being provided to justify the use of an interpreter, the district court's order strays from addressing access to the evaluation and whether it can be recorded and ventures improperly into managing how the evaluation should be conducted. Therefore, we hold that the district court abused its discretion in ordering the interview portion of the examination to be conducted with the assistance of an interpreter.

*Powers has not shown a due process violation*

Powers argues that the conditions imposed on the exam almost guarantee that no reputable neuropsychologist will agree to conduct the examination, such that the order deprives him of his best argument towards rebutting Bueno's allegations of traumatic brain injury. But neuropsychologists are not entitled to any enhanced level of deference not afforded to any other expert witness who accepts payment to involve themself in civil litigation. To the contrary, as with any other expert witness, neuropsychologist expert witnesses have an obligation to comply with civil litigation discovery requirements and court orders regarding the same. We leave it to the broad discretion of the district court to fashion appropriate remedies for any witness's refusal or failure to comply with those obligations.

Specific to the contention raised herein, Powers' expert stated in a declaration that "[t]he position of the vast majority of neuropsychologists in California (where I primarily practice) is that, if compelled to disclose confidential information pertaining to neuropsychological testing, the neuropsychologist must decline to participate in such testing, as such participation would violate ethical standards." The expert noted that if the court ordered disclosure of such

SUPREME COURT
OF
NEVADA


(O) 1947A

confidential information in the case, the expert would be ethically compelled to recuse himself from the case. Attached to the declaration were signatures from over 100 other experts who similarly stated that they would "not agree to releasing protected information that would jeopardize future use of tests to a non-psychologist, including attorneys, even under a protective order," and who would similarly recuse themselves from a case if such a stipulation could not be met.

We hold that Powers has not demonstrated a due process violation. Powers did not individually seek out experts; rather, he provided a declaration from over 100 other neuropsychologists, almost all of whom are in California, who stated that they would not conduct the exam if it involved the disclosure of raw data, as was ordered here. California alone has 730 neuropsychologists. *See Neuropsychologists in California*, Health Grades, https://www.healthgrades.com/neuropsychology-directory/ca-california (last visited Feb. 6, 2026). A letter from 100 neuropsychologists is hardly evidence that "virtually 100 percent of the neuropsychologists" would not agree to conduct the examination. Therefore, we conclude that Powers has not demonstrated a due process violation.

### CONCLUSION

We hold that NRS 629.620 is unconstitutional and thus of no effect, to the extent it pertains to discovery during civil litigation. Regarding the neuropsychological exam conditions set forth in this case, the disclosure of the raw data subject to a protective order is permitted but the allowance of an interpreter is not permitted absent a showing of real need or good cause, and the audio recording condition must be stricken. Accordingly, we grant the petition in part and direct the clerk of this court

(O) 1947A

to issue a writ of mandamus instructing the district court to modify the conditions imposed on Bueno's neuropsychological examination so as to deny the presence of an interpreter and, unless alternative sufficient good cause is shown, to deny any audio recording of the examination. The petition is denied in all other respects, and this court's October 8, 2024, stay of the district court proceedings is hereby lifted.

_____, C.J.
Herndon

We concur:

_____, J.
Pickering

_____, J.
Bell

_____, J.
Cadish

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A